UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RUTH MELANIE CASTRO,

    *Plaintiff*,

v.

TIERNO CARE HOME HEALTH
AGENCY, INC., *et al.*,

    *Defendants*.

Civil Action No. 21-0282 (FYP)

# ORDER

    This matter comes before the Court upon consideration of Plaintiff's Motion for Conditional Certification of a Collective Action and Notice to Potential Plaintiffs. *See* ECF No. 25. For the following reasons, the Court will grant Plaintiff's Motion for Conditional Certification, but will require the parties to meet and confer before submitting a revised Notice to Potential Plaintiffs.

    From approximately 2010 to 2020, Plaintiff Ruth Melanie Castro worked as a home health aide for Defendants Tierno Care Home Health Agency, Inc. ("Tierno") and J & S Health Care, LLC ("J&S"), which are owned and controlled by a husband and wife — Sonia Colbert and Jose Dolores Cruz Romero. *See* ECF No. 6 (Amended Complaint), ¶¶ 5, 7, 17, 28. Tierno and J&S contract with Defendant Professional Healthcare Resources of Washington DC, Inc. ("PHR") to supply home healthcare workers for PHR's patients. *Id.*, ¶¶ 17, 19. During her employment, Castro recorded her time on official PHR paperwork, and received paychecks from both Tierno and J&S. *Id.*, ¶¶ 20, 28. Beginning in 2016, "Tierno and [J&S] developed a scheme to minimize the amount of overtime Tierno had on its payroll." *See* Pl. Mot. at 15; Am. Compl.,

¶ 28.  According to Castro, Tierno paid its home health aides for the first 40 hours they worked each week, and J&S paid the employees for any hours in excess of 40:  This allowed Tierno and J&S to avoid paying for overtime at a rate of 1.5 times the employees' hourly rate for any hours that exceeded 40 in each week.  *See* Pl. Mot. at 15; *see also* Am. Compl., ¶¶ 26, 28, 36.  Further, Castro claims that PHR exercised a high degree of control over Tierno and J&S, which made PHR a joint employer that would be jointly and severally liable for any damages to be paid by Tierno and J&S for violating applicable labor laws.  *See* Am. Compl., ¶¶ 40, 43.

Castro brings claims against Defendants Tierno, J&S, PHR, Sonia Colbert, and Jose Dolores Cruz Romero, seeking to recover unpaid wages and statutory damages under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the D.C. Minimum Wage Act, D.C. Code §§ 32–1001 *et seq.* ("DCMWA").  *Id.*, ¶¶ 65–78.[1]  Castro now moves for the certification of a conditional class of home health aides who were employed by Defendants and subjected to the previously described payment scheme.  *See generally* Pl. Mot.  She asserts that there is a class of at least 120 other home health aides who, like Castro, were not paid overtime wages, as required under the FLSA and DCMWA.  *Id.* at 25; ECF No. 25-1 (Declaration of Ruth Castro).

Under the FLSA, plaintiffs seeking to recover unpaid wages may pursue a collective action by suing on behalf of "other employees similarly situated."  *See* 29 U.S.C. § 216(b).[2]  The requirements for proceeding as a collective action are minimal, including only that the

---

[1]  Castro has also brought claims under the D.C. Wage Payment and Wage Collection Law ("DCWPCL"), D.C. Code §§ 1301 *et seq.*, for which she is not seeking class certification in the instant motion.

[2]  The D.C. Minimum Wage Act permits collective actions that are "[c]onsistent with the collective action procedures of the Fair Labor Standards Act."  *See* D.C. Code § 32-1308(a)(1)(C)(iii).  The Court, therefore, conducts its analysis under the standards for collective actions under the FLSA.  *See Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95, 106 (D.D.C. 2018).

2

employees in the collective action (1) be similarly situated, and (2) opt into the lawsuit by filing their written consent in the court where the action is pending. *Id.* Rule 23 of the Federal Rules of Civil Procedure, which generally governs class-action lawsuits, does not apply to FLSA collective actions. *Guzman v. GF, Inc.*, No. 19-cv-2338, 2021 WL 2439277, at *2 (D.D.C. June 14, 2021)

Courts follow a two-stage process to assess whether a FLSA collective action should be certified. *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 52 (D.D.C. 2012). In the first stage, referred to as "conditional certification," a plaintiff must make a "modest factual showing sufficient to demonstrate that [named] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Castillo v. P & R Enterprises*, 517 F. Supp. 2d 440, 445 (D.D.C. 2007) (quoting *Chase v. AIMCO Props.*, 374 F. Supp. 2d 196, 200 (D.D.C. 2005)). The factual showing at this stage need only clear a low bar. *See McKinney v. United Stor-All Centers, Inc.*, 585 F. Supp. 2d 6, 8 (D.D.C. 2008) ("The court employs a lenient standard in making this determination . . . ."). The standard of proof is low because the goal is "merely to determine whether similarly situated plaintiffs do in fact exist." *Guzman*, 2021 WL 2439277, at *2 (citation omitted); *Dinkel*, 880 F. Supp. 2d at 52 (describing "a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist") (citation omitted). "If a plaintiff can make this showing, a court will conditionally certify the class." *Guzman*, 2021 WL 2439277, at *2 (quoting *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 170 (D.D.C. 2014)). At the second stage — which is not yet at issue — defendants may move at the close of discovery to decertify the conditional class if the record establishes that the plaintiffs are not, in fact, similarly situated. *See Castillo*, 517 F. Supp.

3

2d at 445.

During the certification process, "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989). The Court, therefore, has a duty to "ensure that notice to putative class members is timely, accurate, and informative" when considering motions for conditional class certification. *Stephens*, 291 F. Supp. 3d at 105 (cleaned up).

A.   **Conditional Certification**

The Court finds that Castro has cleared the low, first-stage hurdle for conditional certification as to all Defendants. Castro seeks to certify a class under the FLSA and the DCMWA comprised of "all Home Health Aides employed by either Tierno or [J&S] at any time" between December 16, 2017, and January 29, 2021, who worked more than 40 hours in any workweek during that time for clients of PHR but were not paid overtime wages. *See* Pl. Mot. at 25–26; ECF No. 28 (Plaintiff's Reply) at 16; Am. Compl., ¶¶ 33–38. As alleged, members of the proposed class "earned the exact same hourly rate at all times," performed the same type of work, and were paid according to the same system. *See* Pl. Mot. at 25–26. The members of the proposed class are similarly situated under the FLSA and DCMWA. *See, e.g.*, *Castillo*, 517 F. Supp. 2d at 446 (finding putative class of janitorial employees of same employer similarly situated where they worked overtime without receiving overtime compensation, although they worked at different buildings, had different job titles, only some were unionized, and some were full-time workers and some part-time).

Defendants, it should be noted, do not object to the conditional certification of the class

4

but instead attempt to re-litigate PHR's failed Motion to Dismiss: They argue that PHR is an improper defendant for this collective action. *See* Def. Opp. at 3–5 (arguing that PHR was not a joint employer and thus cannot be subject to any collective action); ECF No. 8 (PHR's Motion to Dismiss) at 4–5 (arguing that Castro failed to allege that PHR is a joint employer under the FLSA because she provided no factual support for her allegations); ECF No. 15 (Order of October 22, 2021) at 5 (denying PHR's Motion to Dismiss). PHR asserts that "none of the four indicators of joint employment apply to the relationship between PHR on the one hand and Tierno and J&S on the other hand;" and Castro therefore may not "rope PHR into this collective action as a joint employer." *See* Def. Opp. at 3–4. To the contrary, however, the Court issued an Order on October 22, 2021, which held that Castro has "alleged facts that would support a finding of a joint-employer relationship" between PHR, Tierno, and J&S. *See* Order at 5. In the Order, the Court noted that "an FLSA claim premised on joint employment should only be dismissed 'when the plaintiff fail[s] to allege *any* facts that would support the inference that the defendant had any control over the employment relationship.'" *Id.* (quoting *Harris v. Med. Transp. Mgmt., Inc.*, 300 F. Supp. 3d 234, 243 (D.D.C. 2018) (alteration in original)). At this early phase of the litigation, the allegations of the Amended Complaint "must . . . be presumed true," *Guevara v. Spartan Enterprises, LLC*, No. 20-cv-1383, 2020 WL 6870007, at *1 (D.D.C. Nov. 23, 2020), and the Court has deemed those allegations adequate to establish PHR's status as a joint employer, *see* Order at 5. The Court will therefore conditionally certify Castro's proposed class as to all Defendants named in the Amended Complaint.

**B.    Proposed Collective Action Notice**

Having conditionally certified Castro's proposed class, the Court next turns to Castro's

proposed plan to notify putative class members. In her Motion, Castro asks the Court to approve a Proposed Notice to Potential Plaintiffs that is to be issued to members of the class. *See* Pl. Mot. at 26; ECF No. 25-3 (Ex. C Plaintiff's Proposed Notice). Defendants, however, raise several potentially valid concerns about the content of Castro's Proposed Notice. *See* Def. Mot. at 5–7.³ Given the Court's responsibility to "ensure" that any notice is "accurate[] and informative," *Hoffmann-La Roche*, 493 U.S. at 172, the Court directs the parties to meet and confer to devise a mutually agreeable notice. *See Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 98 (D.D.C. 2013) (giving the parties fifteen days to submit a mutually agreed upon notice, or if they cannot agree, submit separate proposed notices); *see also Guzman*, 2021 WL 2439277, at *5 (rejecting plaintiff's notice when it was less than clear and directing the parties to confer and submit a revised notice). If the parties find themselves unable to come to an agreement, they should instead submit a joint status report identifying any outstanding issues with respect to the content of the notice and attaching separate proposed notices from each party.

**C.     Facilitation of Notice**

In order to facilitate distribution of the notice, once approved, Castro also seeks an order requiring Defendants "to disclose the names, last known home addresses, and cellular telephone numbers" of "all Home Health Aides employed by either Tierno or [J&S] at any time" between December 16, 2017, and January 29, 2021. *See* Pl. Mot. at 26; Pl. Reply at 16. Castro further requests that the Court allow her "to mail and [e]mail and [t]ext the Notice Form" to potential plaintiffs. *See* Pl. Mot. at 28. According to Castro, such diversified communication methods are

---

³       Specifically, Defendants object that "[t]he notice lumps Tierno, J&S, and PHR together as if they are all one entity called 'Tierno'" and does not list PHR anywhere on the form; that the relevant time period on the form is not supported by evidence; and that the proposed notice fails to include certain other information. *See* Def. Opp. at 5–7.

6

needed because putative plaintiffs "are generally Spanish speaking immigrants with little education," who do not work in a communal environment and cannot be reached by posted notice. *Id.* at 27. Defendants raise no objections to disclosing putative class members' names and last known addresses; but they do object to the disclosure of cellular telephone numbers, and request that notice be limited to delivery by U.S. Mail. *See* Def. Opp. at 8–9.

"Decisions as to whether to facilitate notice to potential plaintiffs, and how to facilitate it, are matters entrusted to the district court's discretion." *Guevara*, 2020 WL 6870007, at *4 (citation omitted). Here, the Court will order disclosure of the potential plaintiffs' names, last known home addresses, and email addresses.[4] "Courts routinely order the production of names and addresses in collective actions," *Blount*, 945 F. Supp. 2d at 97 (citations omitted), and Defendants do not object to such production here, *see* Def. Opp. at 8. Moreover, courts regularly order the production of email addresses and permit notification via email without any heightened showing in light of "[t]he overarching policies of the FLSA's collective suit provisions" to provide adequate notice, such that "potential plaintiffs can make informed decisions about whether to participate." *Guevara*, 2020 WL 6870007, at *4 (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)); *see also Eley v. Stadium Grp., LLC*, No. 14-cv-1594, 2015 WL 5611331, at *3 (D.D.C. Sept. 22, 2015) (noting that courts routinely order production of email addresses and collecting cases). As many courts in this Circuit have recognized, "email is a ubiquitous method of communication that may be more

---

[4] PHR asks that it be exempted from any production order because "PHR does not maintain employment records for Tierno or J&S's employees." *See* Def. Opp. at 7–8. Not so: As alleged in the Amended Complaint, putative class members "note[d] their time and document[ed] their care" on official PHR forms, and PHR "[c]ontrolled, and was in charge of" the day-to-day operations of Tierno and J&S. *See* Am. Compl., ¶¶ 20, 44. At the very least, then, PHR has the names of home health aides and the dates and hours they worked. Further, Defendants have chosen to defend this matter collaboratively, *see* ECF No. 26 (showing the adoption of PHR's Opposition by all other Defendants), further bolstering PHR's inclusion in any production order.

effective than U.S. Mail at ensuring receipt." *Guevara*, 2020 WL 6870007, at \*4; *see also Stephens*, 291 F. Supp. 3d at 121 ("[E]lectronic notice is better calculated to reach employees who may have moved."). In this case, permitting delivery of notice via email best ensures that putative plaintiffs are notified, such that they "can make informed decisions about whether to participate" in this collective action. *Guevara*, 2020 WL 6870007, at \*4 (citation omitted).

As for cellular telephone numbers, "[d]ecisions in [the D.C.] Circuit have reached different conclusions on whether . . . phone numbers are discoverable in connection with collective-action notice procedures," *Stephens*, 291 F. Supp. 3d at 121, but "[w]hen considering a request for telephone numbers of potential class members, the Court looks for a particularized need identified by plaintiffs," *Bradley v. Vox Media, Inc.*, No. 17-cv-1791, 2019 WL 1060804, at \*4 (D.D.C. Mar. 6, 2019). Castro has not made a showing of particularized need here, arguing only that home health aides are "generally Spanish speaking immigrants with little education." *See* Pl. Mot. at 27. Because Castro has not connected this assertion with any need for her to access cellular telephone numbers, the Court will not order production of telephone numbers at this time. *See Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 7 (D.D.C. 2010) (denying production of phone numbers "[b]ecause plaintiffs ha[d] not specially justified their need for access to putative class members' phone numbers"). Accordingly, the Court also will deny Castro's request to notify putative plaintiffs via text message.

Accordingly, it is hereby

**ORDERED** that a plaintiff class consisting of all home health aides employed by either Tierno or J&S to work for clients of PHR at any time between December 16, 2017, and January 29, 2021, is conditionally certified under the Fair Labor Standards Act and the D.C. Minimum

Wage Act; and it is further

**ORDERED** that Defendants produce to Plaintiff's counsel, within fifteen (15) days of this Order, a list of the full names, last known addresses, and email addresses of all individuals in the class. Defendants shall provide this information in a form that can be used by Plaintiff in mailing and/or e-mailing notice to putative class members; and it is further

**ORDERED** that the parties meet and confer regarding the contents of Plaintiff's Notice to Potential Plaintiffs, and that they submit a jointly agreed upon notice, or a status report identifying outstanding issues and attaching separate notices by each party, on or before April 22, 2022.

**SO ORDERED.**

_____
FLORENCE Y. PAN
United States District Judge

Date:   April 5, 2022